UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

GARGANUS MOORE,

Plaintiff,

v.

LIEUTENANT HERR; SERGEANT
OLSON, and CAPTAIN EARHART,

Defendants.

CASE NO. 3:19-CV-479-JD-MGG

OPINION AND ORDER

Garganus Moore, a prisoner without a lawyer, is proceeding in this case against

Lieutenant Herr, Sergeant Olson, and Captain Earhart in their individual capacities for

compensatory and punitive damages for failing to protect him from being assaulted by

another inmate, on May 9, 2019, in violation of the Eighth Amendment. The defendants

have moved for summary judgment, arguing that the evidence is insufficient for a jury

to find they were deliberately indifferent to a known risk of assault against Moore. *See*

ECF 56. Moore filed a response to the defendants' summary judgment motion,[1] and the

defendants filed a reply. *See* ECF 62, 67. Moore filed an additional brief styled as a reply

_____

[1] Moore's response is titled as both a response in opposition to the defendants' motion for
summary judgment and a cross-motion for summary judgment. *See* ECF 62. At the time of
Moore's filing, however, the deadline for dispositive motions had passed. *See* ECF 48. The clerk
docketed Moore's filing as only a response to the defendants' summary judgment motion, and
the Court also treats it as such.

to the defendants' reply, which the Court will treat as a surreply. ECF 68.[2] For the

reasons that follow, the defendants' motion for summary judgment is denied.

BACKGROUND

For purposes of the defendants' motion for summary judgment, the Court

construes the facts and all reasonable inferences therefrom in the light most favorable to

Moore. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). During the relevant time

period, Moore was incarcerated at the Westville Correctional Facility. On May 9, 2019,

he was told that he was being transferred from a dormitory on one side of the facility to

a dormitory on the other side. When he learned of the transfer, Moore went to Captain

Earhart's office to request that he be placed in protective custody.[3] Captain Earhart told

Moore to speak to Sergeant Olson. Moore told Sergeant Olson that he was afraid for his

life in the new dormitory because gang members were out to get him for a debt. He

informed Sergeant Olson that the gang members to whom he owed the debt had been

sending notes to other gang members in the new dormitory telling them to collect the

debt and threatening Moore's life if he did not pay. Moore was placed in a holding cell

where he filled out a protective custody form, which he gave to Sergeant Olson. At that

point, Lieutenant Herr entered the holding cell and began yelling in an intimidating

---

[2] Although surreply briefs are not among the types of briefs allowed under the local rules, *see* N.D. Ind. L. R. 7-1 and 56-1, the Court has the discretion to consider Moore's additional filing, which it will do in the interests of justice.

[3] Pursuant to Indiana Department of Correction ("IDOC") Policy and Administrative Procedure No. 02-01-107, the term "protective custody" refers to "[a] form of physical separation from the general offender population for offenders requesting or requiring protection from other offenders."

2

manner about Moore needing to go to the new dormitory. Moore told Lieutenant Herr his life was in danger in the new dormitory, but Lieutenant Herr continued to yell, saying that if Moore did not leave the holding cell immediately and walk over to the new dormitory right then, Lieutenant Herr would take him there by force. As Moore left the holding cell to be escorted to the new dormitory, he told Lieutenant Herr, Sergeant Olson, and Captain Earhart once again that his life would be in danger at the new dormitory.

Lieutenant Herr and Sergeant Olson walked Moore to the new dormitory. Somewhere between ten to thirty minutes after his arrival at the new dormitory, Moore was followed into the bathroom by another inmate. The inmate asked Moore about the debt. Another inmate then walked into the bathroom and said something to Moore, causing Moore to look away from the first inmate. The first inmate then attacked Moore, knocking him out. When Moore was able to get up from the floor, he noticed that blood was running down his left cheek. Moore's eyes were both swollen and purple, and his left eye had been busted open in two places. He was taken to the medical office, where he received stitches to his left eye.

DISCUSSION

A.    *Standard of Review*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . . ." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

B.     *Failure to Protect Claim*

Prison officials have a duty under the Eighth Amendment to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). They incur liability for the breach of that duty when they are deliberately indifferent to a substantial risk of serious harm. *Id.* at 834. The harm of which the prisoner was at risk must be an objectively serious one. *Id.* There is no dispute that the threat about which Moore complained (being assaulted by another prisoner) meets this criterion. *See, e.g., Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005) ("a beating suffered at the hands of a fellow detainee ... clearly constitutes serious harm"). At issue instead is the subjective prong of Moore's deliberate indifference claim, which requires Moore to show that the defendants had "actual, and not merely constructive, knowledge of the risk . . .; specifically, [the defendants] 'must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw that inference.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*,

4

511 U.S. at 837). "Although this inquiry focuses on an official's subjective knowledge, a prisoner need not present direct evidence of the official's state of mind: 'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence....'" *Id.* (quoting *Farmer*, 511 U.S. at 842).

"In failure to protect cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.'" *Id.* (quoting *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (per curiam) (internal quotation marks and citation omitted)). "Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger."[4] "By contrast, a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk."[5]

---

[4] *Gevas,* 798 F.3d at 480-81 (citing *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) ("[The prisoner's] vague statement that inmates were 'pressuring' him and 'asking questions' were simply inadequate to alert the officers to the fact that there was a true threat at play."); *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008) (beyond expressing fear for his life, prisoner's statements to guards did not identify who was threatening him or what the threats were); *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (prisoner did not mention to guards that he was perceived to be a "snitch" or otherwise apprise them of a specific threat to his life); *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (prisoner only stated vaguely that he was "having problems" in his cellblock and "needed to be removed")).

[5] *Id.* at 481 (citing *Haley v. Gross*, 86 F.3d 630, 643 (7th Cir. 1996) (prisoner advised sergeant, inter alia, that cellmate was intimidating him, acting strangely, had threatened that "something

Moore argues that the defendants were aware of a substantial risk that he would be assaulted by another inmate if he was transferred to the new dormitory because he told them about the risk when he requested to be placed in protective custody. Moore asserts that he told them about the risk both orally as well as in a State Form 24308, "Request for Protection," which he completed and gave to Sergeant Olson at the time of his transfer. During discovery in this case, Moore requested that the defendants produce a copy of the State Form 24308 he claims to have completed and given to Sergeant Olson. When the defendants failed to do so, Moore filed a motion to compel. *See* ECF 55. In response to Moore's motion to compel, the defendants cited the Declaration of Michael Ellis, submitted with their summary judgment motion. *See* ECF 63. Ellis states in his declaration that he is an IDOC employee at Wabash Valley Correctional Facility, that he has reviewed Moore's offender file, and that he can find no record in that file of the State Form 24308, Request for Protection, which Moore claims to have submitted in May 2019. ECF 58-2 ¶ 7. As a result of Ellis's unrebutted declaration, the Court denied Moore's motion to compel. *See* ECF 65.[6] Yet Moore continues to point to the missing State Form 24308 in opposing summary judgment.

---

crucial was going to happen" if one of them was not moved, and was now "deadlocked" in cell, which restricted ingress to and egress from cell)).

[6] Moore was incarcerated at Wabash Valley when the summary judgment motion was filed. But he was incarcerated at Westville when the events at issue transpired. The Court interprets Ellis's declaration as representing that, when he searched for but was unable to locate the protective custody request form Moore claims to have submitted in May 2019, Ellis had access to all of Moore's requests for protective custody including those Moore submitted while incarcerated at Westville.

Specifically, he cites to the defendants' answer, which appears to admit that Mr. Moore requested to be placed in protective custody. *See* ECF 62-1 at 5. Moore argues that this admission proves that he did in fact submit State Form 24308, because IDOC Policy and Administrative Procedure No. 02-01-107 requires that all requests for protective custody be in writing using State Form 24308. *See* ECF 62 at 7; *see also* ECF 2 at 4.

The Court does not disagree with Moore that whether he completed and submitted a State Form 24308 in connection with his request for protective custody on or about May 19, 2019 is a disputed question of fact. But that disputed factual issue relates to whether a certain piece of evidence—one that is relevant to a showing of what the defendants knew about the risk of assault---exists or existed at one time. Even if the Court assumes Moore is correct regarding this disputed fact---i.e., that he did in fact complete and submit a State Form 24308—the current record is undisputed that said evidence is no longer available, as neither Moore nor the defendants are able to produce a copy of it. Accordingly, the factual dispute about the existence of a completed State Form 24308 is not relevant to the Court's resolution of the defendants' summary judgment motion.[7] Without a copy of the missing form that Moore contends he submitted to the defendants, the Court must base its summary judgment ruling on the evidence that *is* in the record concerning what the defendants knew about the risk of assault to Moore. That evidence consists of Moore's deposition testimony.

---

[7] The Court rejects Moore's suggestion that the defendants intentionally suppressed the protective custody request form that he contends he completed and submitted to them in May 2019 because that suggestion is based on speculation rather than evidence.

Moore testified that he told the defendants he was "not safe in [the new dormitory] because of the kikes and the information [he] was getting from other inmates about some money that [he] owed." ECF 58-1 at 14. He testified that he told the defendants he owed a debt of about $500 or more (from "gambling and getting high") but that he could not remember the names of the person or persons to whom he owed it. *Id.* at 14-15. He did, however, provide nicknames of two individuals, who he said were affiliated with a gang known as the Growth and Development. *Id.* at 15. He told the defendants that he could not provide any more information about the identity of the likely prospective assailants "[b]ecause the debts get passed on, and they ain't there to get it. Somebody else had to collect it." *Id.* at 16. In his surreply, Moore further clarifies that he provided the defendants "nicknames with a real last name o[f] two of [the] prisoners who ha[d] threaten[ed] him with a physical beating and death." ECF 68 at 6.

Accepting Moore's testimony as true, Moore has shown that he reported more than only "a generalized, vague, or stale concern about" his safety. *Gevas*, 798 F.3d at 480. Specifically, Moore testified that he told the defendants he received threats of a physical beating and death. And although he could not identify any potential assailant by name, he provided nicknames of potential assailants with the real last names of at least two of those potential assailants. According to Moore, he also told the defendants that the likely assailants were members of a specific gang identified by name, information that might have been used by the defendants to then identify specific inmates who were in the category of likely assailants. Furthermore, Moore gave a specific reason for the threats he was receiving, i.e., gambling and drug-related debts.

This information was sufficient to alert the defendants to the possibility that "there was a true threat at play." *Dale*, 548 F.3d at 569.

The defendants rely primarily on *Klebanowski*, but in that case the plaintiff's "own testimony" showed that "the officers knew only that he had been involved in an altercation with three other inmates, and that he wanted a transfer because he feared for his life. He did not tell them that he had actually been threatened with future violence, nor that the [previous] attack on [him] was inflicted by gang members because of his non-gang status." 540 F.3d at 639-40. The court held that "[w]ithout these additional facts to rely on, there was nothing leading the officers to believe that [the plaintiff] himself was not speculating regarding the threat he faced out of fear." *Id.* at 640. Unlike in *Klebanowski*, Moore related to the defendants a specific, imminent, and plausible threat to his safety: He identified the nature of the threat (a physical beating and death), and supplied context that rendered the threat plausible (he owed money to a gang, whose members were going to try to collect the debt from him). He also gave identifying information regarding the potential assailants, including nicknames, two last names, and gang affiliation.

The defendants stress that Moore was unable to identify a specific assailant. While the Seventh Circuit has "often found deliberate indifference where custodians know of threats to . . . posed by a *specific source*, [the court] ha[s] not been constrained by this fact pattern." *Brown*, 398 F.3d at 915 (emphasis in original). Instead, "[i]t is well settled that deliberate indifference may be found though the specific identity of the

ultimate assailant is not known in advance of assault." *Id.*[8] As the *Brown* court held,

"deliberate indifference can be predicated upon knowledge of a victim's particular

vulnerability (though the identity of the ultimate assailant [is] not known in advance of

attack)." *Id.*

The defendants have not submitted any declaration testimony or other evidence

to controvert Moore's testimony concerning what he told them about the threats against

him, which testimony shows he informed them of a particular vulnerability he had to

the likelihood of assault, although he did not know in advance the identity of the

ultimate assailant. Given the information Moore contends he communicated to the

defendants, "a jury reasonably could infer that [the defendants] not only ha[d] notice of

facts from which they could infer that [Moore] faced a serious risk of substantial harm

[from a specified group of potential assailants], but that they actually drew this

inference, and were thus subjectively aware of the danger he faced." *Gevas*, 798 F.3d at

---

[8] The *Brown* court cited the following cases in support of this proposition: *Farmer*, 511 U.S. at 843 (noting that a custodial official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault," and that "it does not matter whether the risk comes from a single source or multiple sources"); *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000) ("Sometimes the heightened risk of which the guards were aware comes about because of their knowledge of the victim's characteristics, not the assailant's."); *Langston v. Peters*, 100 F.3d 1235, 1238–39 (7th Cir. 1996) (recognizing that deliberate indifference can be based upon jailer's knowledge of inmates likely to be targeted by gangs); *Swofford v. Mandrell*, 969 F.2d 547, 549–50 (7th Cir. 1992) (noting that the placement of a plaintiff who had been charged with sexual assault in a cell with ten other inmates who had been charged with other crimes supports conclusion that defendant custodian acted with deliberate indifference); *Walsh v. Mellas*, 837 F.2d 789, 796 (7th Cir. 1988) (upholding finding of deliberate indifference where "plaintiff was known to be … a targeted inmate and therefore a member of an identifiable group of prisoners for whom risk of assault was a serious problem").

481.[9] "[P]roving deliberate indifference 'requires more than a showing of negligent or even grossly negligent behavior.... [T]he corrections officer must have acted with the equivalent of criminal recklessness.'" *Grieveson*, 538 F.3d at 775 (quoting *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006)). A reasonable jury could find based on Moore's testimony, however, that the defendants' failure to make any investigation when confronted with the information Moore gave them was not only negligent but the equivalent of criminal recklessness.[10]

The defendants also argue that there is no evidence that the specific protection Moore requested – transfer to protective custody – would have prevented the attack on him. ECF 57 at 5 (citing *Rowe v. Morton*, 525 F. App'x 426, 428 (7th Cir. 2013) (plaintiff claiming deliberate indifference due to being denied protective custody must prove that harm would not have befallen him in protective custody)). According to the defendants, this is the case because Moore testified he did not know to whom he owed the debt or the identity of the person who attacked him or even that person's gang affiliation. ECF 58-1 at 20-21; ECF 67 at 3. The evidence shows that Moore was attacked between ten and thirty minutes of his transfer to the new housing unit. Moore also testified that

---

[9] *Compare Grievanson*, 538 F.3d at 779 (where the plaintiff's own affidavits and evidentiary materials confirmed that the plaintiff's "main charge against the jail officers is that they should have known what was going on—not that they did know").

[10] Although the evidence may ultimately show that not all three defendants knew all of the facts to which Moore testified, none of the defendants have provided any statement regarding what he specifically was told by Moore. Further, their joint summary judgment brief makes no individualized legal argument concerning each defendant's respective state of mind. Therefore, for purposes of their summary judgment motion, the Court must treat all three defendants as having received the same information from Moore.

right before he was assaulted, the assailant asked Moore about the debt. What Moore

warned the defendants would happen to him in fact happened to him almost

immediately after he told the defendants it would happen to him. A reasonable jury

could conclude from this timing that the specific protection Moore requested – transfer

to protective custody – would have prevented the attack on him.

For the reasons stated, the Court DENIES the Defendants' Motion for Summary

Judgment (ECF 56).

SO ORDERED on September 14, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT